# *KIRKPATRICK *v.* PURYEAR.

## (*Nashville.*    February 6, 1894.)

1. PAYMENT.  *By check.*

    The indorsement of the check of another to a creditor, in settlement of notes and an account, accompanied by a surrender of the notes and a receipt in full of the account, will be regarded as payment, in the absence of any agreement to the contrary.  (*Post, pp. 410–413.*)

    Cases cited: Springfield *v.* Green, 7 Bax., 301; 75 Va., 726; 86 Va.

2. BILLS AND NOTES.  *Release of indorser of check.*

    The indorser of a check is released by failure, for several days, to present it at a bank in the same place, during which the bank fails and the collection of the check is rendered impossible, when there was a deposit out of which it would have been paid if promptly presented. (*Post, pp. 414, 415.*)

    Cases cited and approved: Bank *v.* Merritt, 7 Heis., 193; Schoolfield *v.* Moon, 9 Heis., 173.

3. SAME.  *Same.  Burden of proof.*

    The holder of a check has the burden of proving that the indorser was not injured by delay in presenting it until after the bank had failed, where the indorser has proved that it was not duly presented for payment; and this is the rule, whether the suit is brought on the check, or on an indebtedness to pay which the check was transferred and indorsed.  (*Post, pp. 415–421.*)

    Cases cited and approved: Bank *v.* Merritt, 7 Heis., 177; Betterton *v.* Roope, 3 Lea, 215.

    Cited and distinguished: 38 N. Y., 289; 3 Lansing, 29; 43 N. Y., 171; 10 Wend., 304; 13 *Id.*, 549; 2 Hill, 425; 2 Black, 350; 43 Ohio St., 53.

---

* The effect of delay in presenting a check to release an indorser is the subject of annotation to the above case in 22 L. R. A., 785 —REPORTER.

4. SAME. *Same. Extinguishment of original indebtedness.*

　　The extinguishment of the liability of an indorser of a check by failure to present it until after the bank has failed, extinguishes his liability also on an indebtedness for payment of which the check was indorsed. (*Post, pp. 415–421.*)

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. ANDREW ALLISON, Ch.

SMITH & DICKINSON for Kirkpatrick.

STOKES & STOKES for Puryear.

SNODGRASS, J. This suit is brought by bill in chancery on an account for $745, alleged to be due from defendant. The defense was by answer, averring payment, and exhibiting the receipt in full of the account sued on. The defendant further set up in defense that the payment was made by a check drawn in his favor by Sulzbacher Bros., and indorsed to the complainant. It was insisted that this check, which was indorsed June 19, 1891, had been accepted in payment of the account, but that, if only taken as a means of payment, the check was not presented until June 22, and until after the failure of the bank on which it was drawn— the Nashville Savings Bank—and that the negligence of the complainant in the presentment of

the check had occasioned the loss, and that defendant was thereby discharged from liability on the original account. It was shown in proof that the account, which was for a little more than $1,100, was made up, among other things, of two notes, aggregating about $1,000. These notes—not due—had been charged into the account by direction of defendant's agent, and for the aggregate of something over $1,100 a receipt in full had been taken, and these notes delivered up in connection with that receipt. Other proof was taken, and the case heard by the Chancellor, who dismissed the bill, and complainant appealed and assigned errors.

The first question to be determined is whether the indorsement of the check was done in payment of the indebtedness. The settlement of that question depends upon the intent of the parties, as evidenced by express agreement or the facts and circumstances of the transaction. The evidence on this subject is as follows: The member of the firm of Kirkpatrick & Co. with whom the transaction was had was asked:

"Please state whether or not you took the checks as in themselves a payment [there were other checks indorsed with this not necessary to be noticed] for the amount of the account, or how you took them."

*Ans.*—"I supposed that the bank drafts and the Sulzbacher check were good, and took them expecting they would be paid, and the money so

realized would go in payment of Puryear's account and the cash I had advanced. I did not take them as a payment of the account, but only as a way of paying it, and for Puryear's convenience. If the checks were not paid, I, of course, did not expect the account would thereby be paid."

It is observed that he does not state what was said between them, nor deny what Puryear's son and agent (to be subsequently shown) testifies as to what was said. At most, it is but the expression of his present view of the condition of his mind at the time of the transaction. The son and agent of Puryear testifies, on being asked:

"What did you say to him when you gave him the check, relative to its being a payment on your father's account?"

"I did not say any thing, except told him that I wanted to pay the account in full as to the amount of it, and gave him the Sulzbacher check in part payment of it."

"Did Kirkpatrick & Co. raise any objection to taking the Sulzbacher check, or what did they say, if any thing, about it?"

"No, sir; they did not make any objection, but remarked that this was good for it."

This, with the delivery up of the notes and the receipting of the account in full, constitutes the facts of the transaction, as developed in the evidence. It will be remembered that this is not the case of Puryear giving his own check for his

own account, and the law relating to that condition of facts need not be discussed. It is the case of the indorsement of a check of another to a creditor in settlement of the account, whether it be payment absolute or conditional, and to be governed by the law as to such transfer.

It is well settled that the taking of the debtor's check on account is not payment, unless it was so intended (*Springfield* v. *Green*, 7 Bax., 301); and it is true that the taking of a check of another by a creditor on account, is not necessarily payment, but must have effect according to the intention of the parties. In the absence of proof of a special agreement, the giving up or retention of the original security will, in general, be a decisive circumstance in determining that question, for, if the creditor means, in any contingency, to resort to the original indebtedness, he will scarcely be willing to surrender all evidence of that indebtedness to his debtor without fortifying himself with some evidence of the real nature of the transaction. *Morris* v. *Harvey*, 75 Va., 726; *Ins. Co.* v. *R. R. Co.*, 86 Va. (19 Am. Rep., 868).

Upon the facts of this transaction, as given by the son, and not denied by the complainant, we are of the opinion that the check was accepted in payment. In this connection it is objected that the pleadings raised no question as to notes delivered up with the receipt when the account was received; but receipt for the account is exhibited with the answer, and the account itself is proven

by exhibit to deposition of defendant's witness before quoted on another point, and it shows that it was largely made up of the notes charged in it, and the answer avers that the check was delivered in payment of *this* account, and the proof so shows.

Where the creditor accepts the check of his debtor, it is his duty to make presentment and demand, and, of course, the same duty devolves upon him in the acceptance of an indorsed check, which is additional security. This check was not, in fact, presented until June 22, after the failure of the bank. Defendant averred, in answer, that Sulzbacher Bros. had on deposit at the time the check was drawn, and up to the failure of the bank, an amount sufficient to have paid the check, and this amount was lost to him by the negligence of the complainant. It is not denied that if these facts be true (and the failure to make demand is proven, though no proof is offered as to the condition of Sulzbacher's account, as averred), that the defendant would be discharged; and without proof of the last one he would be discharged if this was a suit upon the check, but it is insisted that, being a suit upon the original account, the burden of proof is not only on the defendant to show that presentment and demand was not made by the plaintiff, but that Sulzbacher Bros. had the amount of money on deposit to pay it, and that defendant sustained the loss of that amount by reason of such negligence in presenting the check.

It is the duty of the holder of a check, if he receives it after banking hours, to present it during banking hours of the next day, if the bank is located in the same town, as was this one. If not, then to forward it next day by mail. If he fails to do this, and the check is afterwards not paid, his right, as against the indorser, is extinguished. Morse on Banking, Sec. 422; *Bank* v. *Merritt,* 7 Heis., 193; *Schoolfield* v. *Moon,* 9 Heis., 173. It is argued, however, that though the indorser's liability as such is extinguished, yet, if the indorser is the original debtor, his liability on the original indebtedness is not extinguished, unless it further appears that actual loss was sustained in consequence of such delay, and that the burden of proof is on the debtor to go further and show such loss.

This exact question, in express terms, has not been adjudicated in this State, and there is a great dearth of authority upon it, although it would seem to be one which must have repeatedly arisen. It is settled in this State, and many others, that in suits on checks, where there has not been due demand and notice, the burden of proof is upon the holder of the check to show that the drawer has sustained no injury. 3 Am. & Eng. Ency. of Law, and cases cited under the note as to burden of proof. See *Bank* v. *Merritt,* 7 Heis., 177.

The same doctrine has been applied in this State to the case of suit on the original indebtedness. *Betterton* v. *Roope,* 3 Lea, 215. It is true

that in that case it appeared in fact that the drawer had funds to his credit, but this was not the controlling point in the case, and, besides, this was the case of a drawer's check and not an indorsed one.

We think the sound rule is, whether the suit be on the check indorsed, or on the original indebtedness, and it appears in the proof that such check was not duly presented and payment demanded, where the check has been received as absolute or conditional payment, then the burden of proof shifts to the holder to show that, notwithstanding such delay, the debtor was not injured. In the Merritt case, already cited, it is said if the presentment and demand be not properly made, the presumption of injury from the negligence of the holder arises, and the *onus* of showing that no injury has resulted from delay to the drawer rests on the holder. The presumption is, that the check is drawn on actual funds.

It is insisted in the argument of complainant, that a different rule is settled in the case of *Bradford* v. *Fox*, 38 New York, 289, and *Railroad Company* v. *Collins*, 3 Lansing, 29 (New York Supreme Court). But this is an erroneous application of these cases. The first was the case of the debtor giving his own check in payment, which the bank refused to certify without explanation, thus creating the inference that the check was worthless. It is true that the Court in that case said "that cases regarding the laches of the

Kirkpatrick *v.* Puryear.

holder in demanding payment or in giving notice of dishonor, in which the *onus* of proving that no damages accrued was upon the holder, had no application, because this action was for the collection of the pre-existing debt, and the *onus* of proving payment was upon the defendant, and that it was not sufficient for him to show laches of the plaintiff, but he must go further, and show that loss had occurred."

But that was simply applying the rule, which, as we understand it, is applied by Courts holding that the burden of proof, in case where the debtor has given his own check in payment of his indebtedness, is upon the holder to show both delay and loss. Such holding puts the burden upon him, not only to show delay in presentment of the check, but loss to himself in consequence. If, however, payment, absolute or conditional, has been made by the check of another, indorsed by the debtor, the failure to present such check and demand payment properly, will release the debtor as to his liability upon the check and original indebtedness. *Smith* v. *Miller*, 43 New York, 171; Daniel on Neg. Inst., Sec. 828, cited and approved, 3 Lea, 220.

The second case in Lansing's reports, 3 New York, cited, was also a case where the debtor had given his own check, and in which the rule stated in the Bradford case was applied. Put, too, upon the ground that the action was upon the pre-existing debt, and was not, therefore, concluded by

27—9 p

proof of delay in presentment of the check, independent of any proof of loss, they sustain the theory that such delay alone does not discharge the original debt of the drawer. But, in the case of *Carroll* v. *Sweet,* reported in Vol. 13, Lawyer's Reports Annotated, a later case from the same State, and from the Court of Appeals, where provisional payment of a debt had been made by *indorsed check,* it was said: "The debt remained until discharged by payment of the check, or by such dealing with the check by the plaintiff as would, in judgment of law, convert what was originally a provisional payment into an absolute one. The check was dated August 22, 1887, and was drawn on the Ashbury Park National Bank, and was, on the same day, indorsed and delivered by the defendant to the plaintiff at the place where the bank was located. The plaintiff, on accepting the check, assumed, as between himself and the defendant, an obligation to present the same to the bank for payment within the time prescribed by the law-merchant; that is to say, not later than the next day after its date, and, if refused, to protest the same, and give notice of non-payment. *Smith* v. *James,* 20 Wend., 192. It was not presented until the thirty-first of August, nine days after it was received by plaintiff. The defendant was, by such delay, discharged from liability as indorser of the check, irrespective of any question of loss or injury. Presentment in due time, as fixed by the law-merchant, was a condition upon

the performance of which the liability of the defendant as indorser depended, and this delay was not excused, although the drawer of the check had no funds or was insolvent, or because present-ment would have been unavailing as a means of procuring payment. *Mohawk Bank* v. *Broderick,* 10 Wend., 304; *Gough* v. *Statts,* 13 Wend., 549.

"A different rule obtains as between the holder and drawer of a check. As between them, pre-sentment may be made at any time, and delay in presentment does not discharge the liability of the drawer, unless loss to him has resulted. *Little* v. *Phenix Bank,* 2 Hill, 425.

"The action here is not upon the indorsement of the defendant, but upon the original indebted-ness. If the discharge of the defendant's liability as indorser discharges also his liability as debtor for the original debt, the judgment must, on that ground, be reversed. In *Hamilton* v. *Cunningham,* 2 Black, 350, Chief Justice Marshall considered the effect of the neglect of the holder of a bill to give due notice of dishonor, whereby prior par-ties thereto were discharged upon the liability of the debtor for a debt for which the bill was drawn. After showing that the authorities in which the debtor had been discharged, proceeded upon the theory that he has sustained an actual loss, he reached the conclusion that the true prin-ciple is 'that, if a bill be received as provisional payment, the omission to give defendant notice of its dishonor deprives the creditor of his action on

that bill, but does not compel him to take it in absolute payment or deprive him of his action on the original debt further than damage has been sustained actually or in *legal supposition* by the debtor.' See, also, *Gallagher* v. *Roberts*, 2 Wash. C. C., 191; *Fliey* v. *Sleet*, 43 Ohio St., 53."

Andrews, Judge, who delivered the opinion in that case, adds: "I am not sure that this doctrine is reconcilable with expressions in the opinion of this Court in *Smith* v. *Miller*, 43 N. Y., 171; 52 N. Y., 545." He then quotes from that case, and shows that judgment was therein rendered for the defendant on two grounds: "First, in the absence of proof of demand and refusal, and notice to the drawer according to the usual course, there could be no recovery upon the draft or upon the indebtedness upon which it was given; and, second, on the ground of negligence in failing to present the check on the day on which it was given. The last ground stated was, upon the facts, a satisfactory basis for the judgment; and the same principle was applied, upon similar facts, in *Meadville First National Bank* v. *Fourth National Bank*, 77 N. Y., 320." The Court then declines to determine whether the cases cited were in conflict or not, or which class of cases stood upon the better reason, but gave the defendant a new trial upon the facts.

We think, as therein indicated, that the extinguishment of liability as indorser on the check was an extinguishment of liability for the original

indebtedness; that when defendant had shown such delay in the presentment and demand as discharged the indorser, it made out a case in which he was discharged from the original indebtedness; and if any facts existed which would rebut the case thus made out, the *onus* shifted to the plaintiff to show them.    See, as to shifting of burden of proof on analogous question, Morse on Banking, Sec. 421, Subsec. *f.*

The judgment is therefore affirmed, with costs.